**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Marcos M.C.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**Civil File No. 26-04367 (MJD/SGE)**

---

Alexander Riley Lindenfelser, Attorney at Law, Counsel for Petitioner.

David W. Fuller, Derek Granzhorn, Assistant United States Attorneys, Counsel for Federal Respondents.

---

This matter is before the Court on Petitioner Marcos M.C.'s Petition for Writ of Habeas Corpus ("Pet."). Petitioner claims he is being detained in violation of the Fourth and Fifth Amendments, the Administrative Procedures Act, the Accardi Doctrine, and the Immigration and Nationality Act ("INA") . (Id. ¶¶ 37-122.) Respondents state that Petitioner has no claims under any of his theories for relief. (Doc. 5.)

Because the Court finds that Petitioner's arrest violated the Fourth Amendment, Petitioner must be released immediately.

# I. FACTS[1]

## A. Background Facts

Petitioner is a 27-year-old citizen of Mexico who entered the United States without inspection when he was about 16-years-old. (Pet. ¶ 26.) He is the father of a seven-year-old U.S.-citizen son, whom he sees most weekends even though he is separated from his U.S.-citizen wife. (Id. ¶ 21.) Petitioner "has close friends here, a fixed address, . . . deep roots in the community," and attends church. (Id. ¶¶ 23, 114.) For the last year and a half he has lived with a friend and his family. (Id. ¶ 22.) Petitioner thinks of these people as members of his own family. (Id.) Petitioner works in construction doing roofing and siding installation. (Id. ¶ 23.)

## B. Petitioner's Criminal History

On June 22, 2019, Petitioner was arrested in Sartell, MN for driving after revocation and driving while intoxicated. (Doc. 6-1 (Form "I-213") at 3.) On August 4, 2021, the Benton County Sheriff's Office arrested Petitioner on a warrant for failure to appear and on April 26, 2022, the Stearns County District

[1] Undisputed facts from the Petition are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

Court convicted him for driving while intoxicated and sentenced him to 90 days local confinement. (Id.)

On June 16, 2023, the Hennepin County District Court dismissed 5th degree drug charges against Petitioner. (Id.) On December 17, 2024, the Dakota County District Court dismissed unknown charges against Petitioner. (Id.)

**C. Petitioner's Arrest**

On August 18, 2026, ICE/DHS Officer Rott "encountered" Petitioner at the Benton County Jail "while conducting routine Criminal Alien Program operations." (Id. at 2.) "Through record checks in DHS databases and a biometric confirmation of identity, [he] determined that [Petitioner] is illegally residing in the United States and is amenable to removal." (Id.); see also, Jaminton R.B. v. Mullin, No. 26-CV-3091 (ECT/JFD), 2026 WL 2350324, at *2 (D. Minn. Aug. 13, 2026) (defining "biometric confirmation" as "the measurement or analysis of a unique physical or behavioral characteristic (such as fingerprints)").

ICE then lodged a detainer for Petitioner and issued an I-200 administrative warrant for arrest. (I-213 at 2; Doc. 6-2 ("the warrant").) The warrant was based on probable cause supported by "statements made voluntarily by the subject to an immigration officer and/or other reliable

evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (Warrant at 1.) The warrant does not specify what "statements" Petitioner made or when he made them or what "other reliable evidence" ICE collected that indicated Petitioner lacked immigration status.

ICE arrested Petitioner on August 21, 2026 at the Benton County Jail. (I-213 at 2; Pet. ¶ 27; Doc. 7 at 5.) The warrant was served on Petitioner in Foley, Minnesota, which is where the Benton County Jail is located. (Warrant at 1.) Petitioner states he was not given a copy of the warrant until he was in an ICE vehicle after his arrest, while Respondents state that he was arrested with a valid administrative warrant. (Pet. ¶ 28; Doc. 5 at 2.) He was transported first to the Whipple Building in St. Paul for processing. This is where ICE recorded Petitioner's biometric information, including fingerprints, scars, marks, and tattoos. (Doc. 7 at 5-6.) He was then transported to the Sherburne County Jail, where he remains in ICE detention. (Id. at 6; I-213 at 1 (listing Petitioner's tattoos).)

Also on August 21, but after Petitioner was transferred to the Sherburne County Jail, ICE issued a notice to appear ("NTA"). (Doc. 6-3 at 4 (listing Petitioner's address as "Sherburne County Jail . . . Elk River, Minnesota").)

### D. The Instant Petition

Petitioner filed the instant Petition for Writ of Habeas Corpus on October 12, 2026. On October 13, the case was assigned to the undersigned, who issued an Order to Show Cause. Respondents responded on October 16, 2026 and Petitioner replied on October 19.

## II. DISCUSSION

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

It is well established that certain constitutional protections available to persons inside the United States are unavailable to noncitizens outside of our geographic borders. But once a noncitizen enters the country, the legal

circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is "lawful, unlawful, temporary, or permanent." Id. at 693 (citations omitted). Petitioner must prove unlawful detention by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B. Effect of Avila v. Bondi on Petitioner's Claims**

Respondents first appear to argue that Petitioner is subject to mandatory detention pursuant to § 1225, as confirmed by the Eighth Circuit in Avila v. Bondi,170 F.4th 1128 (8th Cir. 2026). (Doc. 5 at 2, 13.) While the Eighth Circuit's decision in Avila would preclude a statutory claim premised on § 1225, Avila does not foreclose constitutional or statutory claims not raised in that case. The Court therefore turns to Petitioner's constitutional arguments, discussing first the Petitioner's arrest under the Immigration and Nationality Act ("INA") and the Fourth Amendment.

**C. Problems with Petitioner's Arrest**

To the extent Respondents rely on § 1225(b)(2) to justify Petitioner's arrest, the Court notes that § 1225 does not include an explicit warrant requirement. However, "[l]ike any federal agency, ICE 'literally has no power to act—

including under its regulations—unless and until Congress authorizes it to do so by statute.'" Luis A.S. v. Easterwood, No. 26-CV-2447 (PJS/DTS), Docket No. 9, slip op., at 2 (D. Minn. May 26, 2026) (quoting Fed. Election Comm'n v. Ted Cruz for Senate, 596 U.S. 289, 301 (2022)). Generally, "it is not a crime for a removable [noncitizen] to remain present in the United States," so the INA "instructs when it is appropriate to arrest [a noncitizen] during the removal process." Arizona v. United States, 567 U.S. 387, 407 (2012). Specifically, the INA provides "two mechanisms" for ICE agents to arrest a noncitizen during the removal process: (1) on a warrant issued by the Attorney General pursuant to 8 U.S.C. § 1226(a), and (2) without a warrant, but provided that ICE agents comply with the warrantless arrest provisions enumerated in 8 U.S.C. Section 1357(a)(2). See Jose V.P.R. v. Sheriff of Freeborn Cnty, No. 26-CV-3047 (NEB/DLM), 2026 WL 2546265, at *1 (D. Minn. Aug. 28, 2026).

### 1. The I-200 Administrative Arrest Warrant was Invalid

Although they quibble about the exact timing, the parties agree that Petitioner was served a copy of the warrant dated August 18, 2026 sometime on August 21, the day Petitioner was arrested. Therefore, when ICE arrested Petitioner, it did so pursuant to the discretionary detention provisions of 8 U.S.C.

§ 1226. (Warrant at 1 (directing the warrant to "[a]ny immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations").) Section 1226(a) prefaces arrest "[o]n a warrant issued by the Attorney General." Thus, to detain a noncitizen under § 1226(a), a warrant is required. See Martha C.G.P. v. Blanche, 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026) (citing Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (collecting cases)). But see Picazo Jimenez. v. Blanche, 26-cv-2740-ECT-JFD, Doc. 12, slip op., at 3 (D. Minn. June 29, 2026) (holding that language of Form I-200 "identifies which officers are authorized to conduct the arrest," but not that arrest will occur pursuant to § 1226 or that petitioner was arrested under § 1226).

A Form I-200 is the administrative arrest warrant that authorizes a non-citizen's arrest. However, the warrant must be issued "[a]t the time of issuance of the notice to appear [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b)(1). The NTA is the document that initiates removal proceedings. See 8 CFR § 239.1. "Putting both

rules together, DHS may arrest a non-citizen using a Form I-200 warrant only if the warrant issues at the same time or after DHS issues an NTA." See Dylan M. v. Blanche, 26-cv-02802 (JMB/LIB), Docket No. 12, slip op., at 9 (D. Minn. June 8, 2026) (citing 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1)) (emphasis added).

Here, the warrant was issued three days before the NTA was issued. Therefore, the warrant was invalid under 8 C.F.R. § 236.1(b)(1).

Respondents, however, insist that this timing error does not render the arrest warrantless. Respondents' arguments are difficult to parse, but they first say that "[i]t is regulation, not statute, which governs the vesting of jurisdiction before an immigration judge." (Doc. 5 at 3 (citing Ali v. Barr, 924 F.3d 983, 986 (8th Cir. 2019) (holding that "[j]urisdiction vests, and proceedings before an [IJ] commence, when a charging document . . . is filed with the Immigration Court") (quoting 8 C.F.R. § 1003.14(a) & citing 8 C.F.R. § 1003.13). The unquoted portion of § 1003.14(a), which Respondents rely on, states, "However, no charging document is required to be filed with the Immigration Court to commence bond hearings pursuant to [enumerated sections of the C.F.R.]." Section 1003.13, in turn, lists what documents qualify as "charging documents," including an NTA.

Respondents further assert that because the IJ has jurisdiction to conduct certain bond hearings before an NTA is filed, an IJ's jurisdiction is not dependent on filing the NTA, "for an [IJ] could not have jurisdiction over an alien in custody if the alien had not already been taken into custody." (Doc. 5 at 3-4 (second emphasis added).) The argument seems to go that ICE's authority to arrest and detain is therefore not dependent on prior jurisdiction of the immigration judge, but rather authority that comes from Congress. (Id. at 4.) For support, Respondents state, "Under § 1226(a), 'the Attorney General can exercise discretion to issue a warrant for an alien's arrest and detention pending a decision on whether the alien is to be removed from the United States.'" (Id. (quoting Arizona, 567 U.S. at 407).) Accordingly, Respondents argue that 8 C.F.R. § 236.1(b)(1), which dictates that an NTA must be filed before or contemporaneously with the I-200 warrant, must be read against the plain language of the statute, "which gives unequivocal authority to the Attorney General to arrest and detain an alien based on a warrant." (Id.)

Petitioner succinctly stated the problem with Respondents' "circular" argument: "Respondent's proposed solution is to unglue the statutory term 'warrant' as used in 8 U.S.C. § 1226(a) from its associated regulations." (Doc. 7 at

11.) Moreover, no one argues that a noncitizen cannot be arrested prior to appearing before an IJ. That only makes sense. However, that fact does not give ICE permission to arrest someone using an invalid warrant. Contrary to Respondents' position, the problem here has to do with the issuance of the NTA, not the filing of the NTA.

In addition, the Court finds nothing in 8 C.F.R. § 236.1(b)(1) difficult to square with Arizona. Respondents cite page 407, which provides the following:

> As a general rule, it is not a crime for a removable alien to remain present in the United States. If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent. When an alien is suspected of being removable, a federal official issues an administrative document called a "Notice to Appear." The form does not authorize an arrest. Instead, it gives the alien information about the proceedings, including the time and date of the removal hearing. If an alien fails to appear, an in absentia order may direct removal.
>
> The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process. For example, the Attorney General can exercise discretion to issue a warrant for an alien's arrest and detention pending a decision on whether the alien is to be removed from the United States. And if an alien is ordered removed after a hearing, the Attorney General will issue a warrant. In both instances, the warrants are executed by federal officers who have received training in the enforcement of immigration law. If no federal warrant has been issued, those officers have more limited authority. They may arrest an alien for being in the United States in violation of any [immigration] law or regulation, for example, but

> only where the alien is likely to escape before a warrant can be obtained.

Arizona, 567 U.S. at 407–08 (brackets in original) (citations omitted).

Nothing in this decision allows ICE to issue a warrant without first issuing an NTA. It is axiomatic that when the various rules and statutes mentioned by Respondents use the word "warrant," they mean a valid warrant. The filing vs. issuing dichotomy that Respondents rely on is misplaced. Whether a warrant is filed has nothing to do with whether it was issued.

Although Respondents try to confuse the issue, the call here is not even close: the NTA was issued three days after the warrant. The warrant was therefore invalid and Petitioner's arrest was "functionally warrantless." Jose V.P.R., 2026 WL 2546265, at *2 (holding that "[a]n arrest conducted pursuant to a Form I-200 Warrant issued prior to a [NTA] is functionally warrantless").

**2. Petitioner's Arrest did not Comply with 8 U.S.C. § 1357(2)**

ICE has "limited authority" to make warrantless arrests and must act pursuant to 8 U.S.C. § 1357(a)(2). Arizona, 567 U.S. at 408. Section 1357(a)(2) permits immigration officials to arrest a noncitizen without a warrant only where the officer has "reason to believe" that (1) "the alien . . . is in the United States in

violation of any such law or regulation," and (2) "is likely to escape before a warrant can be obtained for his arrest."

Section 1357 implicates the Fourth Amendment's protections. The Fourth Amendment protects all individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. An arrest qualifies as a "seizure" and therefore must be supported by probable cause. United States v. Miller, 974 F.2d 953, 956 (8th Cir. 1992). Fourth Amendment protections apply to seizures of noncitizens. United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010). Because § 1357(a)(2) implicates seizures of noncitizens, "reason to believe" in the statute means "constitutionally required probable cause." Id. To determine whether there is probable cause, a court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Probable cause exists when, based on the totality of the circumstances, facts are "sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." Garang v. City of Ames, 2 F.4th 1115, 1121 (8th Cir. 2021) (cleaned up).

Putting this all together, for the warrantless arrest of Petitioner to be valid under § 1357(a)(2), Respondents must have had probable cause to support that Petitioner was (1) not lawfully present and (2) likely to escape before they could get a warrant based on the totality of the circumstances. The burden is on Respondents to prove both elements of a valid warrantless arrest. The failure to prove both elements requires that the petitioner be released. Cutberto R.P. v. Blanche, No. CV 26-01934 (MJD/DTS), 2026 WL 3040320, at *5 (D. Minn. Apr. 10, 2026) (holding that release was proper remedy when Respondents did not act within their constitutional authority in effectuating petitioner's arrest); Jefferson G.H.L. v. Blanche, Civil No. 26-2344 (JRT/ECW), 2026 WL 1229623, at *3 (D. Minn. May 5, 2026) (citing Ruben D.A.G. v. Blanche, No. 26-CV-02041 (MJD/DJF), Docket No. 9, slip op., at 8 (D. Minn. April 20, 2026)) ("Anyone without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen.")); Francisco M.A. v. Blanche, Civil No. 26-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026) ("To hold that a noncitizen is likely to escape merely because they are removable would effectively collapse § 1357(a)(2)'s two distinct requirements into one.").

**a) Probable Cause to Believe Petitioner was in the U.S. Illegally**

The Court finds that ICE agents did not have probable cause to believe Petitioner was in the U.S. illegally. Both the detainer and the warrant rely on the same two grounds as probable cause to arrest Petitioner: "statements made voluntarily by the subject to an immigration officer" and "other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removeable under U.S. immigration law." (Warrant at 1; Doc. 6-4 (Detainer, which contains very similar, though not identical, language).)

While voluntary statements can provide probable cause to believe a noncitizen is in the country illegally, in this case there are no documents containing specific statements that Petitioner made to ICE. Contra, Eusebio R.F. v. Mullin, No. 26-cv-4046, Docket No. 8, slip op., at 12 (D. Minn. Oct. 2, 2026) (during traffic stop, Petitioner admitted to being in the country illegally); Jorge Anibal P.P. v. Blanche, No. 26-cv-3125 (LMP/LIB), 2026 WL 2017765, at *3 (D. Minn. July 13, 2026) (same). "[A]bsent some evidence in the record that points to how [Petitioner]'s information within DHS databases establishes probable cause that he is removable from the United States[,]" Respondents' invocation of

unspecified statements and other "reliable" information is unavailing. Jean F. v. Blanche, No. 26-cv-4160 (JMB/ECW), Docket No. 12, slip op., at 8 (D. Minn. Oct. 16, 2026). This warrant did not have a basis in the record and did not establish probable cause, especially when Petitioner entered the country without inspection and apparently had no interactions with ICE prior to his arrest.

Not even Officer Rott, who conducted the August 18 records check (I-213 at 2) and who signed a declaration in this case, provides anything helpful. All he attests to is that the documents filed by Respondents were made and kept in the ordinary course of business. (Doc. 6 ¶¶ 4-7.) There is no information related to the "biometric information" he found that supported probable cause or how that information, if it existed, established that Petitioner was illegally residing in the United States. (See I-213 at 2.)

**b) Probable Cause to Believe Petitioner was Likely to Escape Before a Warrant Could be Obtained**

Even if ICE had probable cause to believe Petitioner was in the country illegally, they do not cite any facts supporting the conclusion that Petitioner was likely to escape before they could obtain a warrant. This Court has previously held that merely being in the country illegally is not per se evidence that an individual is an escape risk. See, e.g., Ruben D.A.G., Civ. No. 26-2041, Docket

No. 9, at 8 ("Anyone without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen."); Sergi A.G. v. Blanche, No. 26-cv-03393 (MJD/SGE), Docket No. 9, slip op., at 18–20 (D. Minn. Aug. 31, 2026) (merely being a passenger in a car who had overstayed his visa did not support holding that petitioner was a flight risk under § 1357). Finding that "a noncitizen is likely to escape merely because they are removable would effectively collapse § 1357(a)(2)'s two distinct requirements into one[]" and impermissibly render part of the statute "superfluous." Francisco M.A., 2026 WL 1229701, at *3 (citation omitted).

ICE agents on scene had the "burden to make a 'particularized assessment' into whether the noncitizen is likely to evade detention," meaning that he could not be located at another identifiable location after a warrant was obtained. Jorge Anibal P.P., 2026 WL 2017765, at *4 (quoting Orellana v. Nobles Cnty., 230 F. Supp. 3d 934, 946 (D. Minn. 2017)); Walther Ademir A. S. v. Blanche, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (citing Escobar Molina v. DHS, 832 F. Supp. 3d 22, 39 (D.D.C. 2026)). Therefore, the important question for the Court is whether ICE would be able to locate Petitioner at a later date after obtaining a warrant for his arrest.

Based on the totality of the circumstances, Respondents fail to present sufficient evidence that Petitioner was likely to escape when they arrested him without a warrant. In truth, they present no evidence. This, alone, is fatal because Respondents have the burden on this issue.

Petitioner has an innocuous criminal history, has lived in the United States for 11 years, lives at a stable address, and has an established community network, including a U.S.-citizen child. (Pet. ¶¶ 21-22, 26, 114.) Courts have found that these types of community connections weigh against a finding that a noncitizen is likely to escape before ICE could obtain a warrant for their arrest. See Escobar Molina v. DHS, 811 F. Supp. 3d 1, 31, (D.D.C. 2025) ("Courts have also made the self-evident finding that the likelihood of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties.") (collecting cases). Therefore, "[b]ecause Respondents have not shown that Petitioner was likely to escape, they failed to comply with 8 U.S.C. § 1357 . . . Respondents, therefore, improperly arrested and detained Petitioner." Hector J.A.S. v. Shea, No. CV 26-2242 (JRT/DLM), 2026 WL 1243500, at *3 (D. Minn. May 6, 2026).

### D. Remedy

Because Respondents did not act within their statutory authority in effectuating Petitioner's arrest, his detention violates the Fourth Amendment. Thus, release is the appropriate remedy. See, e.g., Ahmed, 2026 WL 25627, at *3.

## III. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED in part as follows:**

1. Respondents are ordered to arrange for the **immediate** release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least two (2) hours in advance to Petitioner's counsel;

2. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken during his arrest;

3. Petitioner shall be released on his own recognizance;

4. Neither Respondents nor anyone affiliated with them may re-arrest Petitioner based on any legal theories advanced before this Court; and

5. Respondents are ordered to confirm with the Court Petitioner's release from custody within forty-eight (48) hours from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 2, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court